# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

ALLOC, INC., a Delaware corporation,
BERRY FINANCE N.V., a Belgian
corporation, and VÄLINGE INNOVATION
AB (f.k.a. VÄLINGE ALUMINUM AB),
a Swedish corporation,

**Plaintiffs-Counterclaim Defendants,**

**v.**                                    **Case No. 00-C-0999**

PERGO, L.L.C., a Delaware limited
liability company,

**Defendant-Counterclaimant.**

---

# DECISION AND ORDER

---

Five motions are addressed in this Decision and Order. The motions are two expedited non-dispositive motions, two motions to exclude expert testimony and to strike expert reports, and a motion to amend the answer and counterclaims.

## ALLOC'S MOTION TO COMPEL

The Plaintiffs, Alloc, Inc., Berry Finance N.V., and Välinge Innovation AB (collectively "Alloc"), filed an expedited non-dispositive motion under Civil Local Rule 7.4, re-designated as Civil Local Rule 7(h) effective February 1, 2010, to compel Defendant Pergo,

L.L.C. ("Pergo") to produce, pursuant to a waiver of attorney-client privilege, communications authored by its current trial counsel. Alloc contends that Pergo waived the attorney-client privilege as to current trial counsel by disclosing communications with its erstwhile trial counsel, who had also served as its opinion counsel. Pergo responds asserting that, properly understood, the scope of any waiver of attorney-client privilege is not so broad as to encompass communications between subsequent trial counsel separate and distinct from previous counsel as to whom the privilege was waived. Analysis of the waiver issue requires that the Court begin by setting forth the relevant background information.

## Background

Alloc claims willful infringement by Pergo. Pergo raises the advice of counsel defense.

Prior to the commencement of this action, Pergo sought the opinion of outside counsel from the law firm of Stevens, Davis, Miller & Mosher, L.L.P. ("Stevens, Davis"), on the issues of validity, enforceability, and potential infringement of existing patents. Stevens, Davis authored four opinion letters on these issues (the "Pavelko opinions"). Pergo received the first Pavelko opinion letter on June 26, 2000.

On August 18, 2000, Alloc commenced this action. Two days later, on August 20 2000, Pergo received the second Pavelko opinion letter. On September 13, 2000, Thomas P. Pavelko ("Pavelko") filed a certificate of interest and appeared as a member of the Stevens, Davis firm on behalf of Pergo.

On October 20, 2000, Pergo received the third Pavelko opinion letter, dated October 19, 2000. Subsequently, Pergo sought to change trial counsel, and on February 2, 2001, this Court issued a margin order allowing Pavelko and the Stevens, Davis firm to withdraw, and substituting the law firm of Skadden, Arps, Meagher & Flom ("Skadden, Arps"). Less than a month later, on February 28, 2001, Pergo received the fourth and final Pavelko opinion letter.

On October 5, 2006, during the discovery process and in response to Alloc's request for "[a]ll documents . . . regarding any opinion or advice received or relied upon by PERGO with respect to infringement, validity, or enforceability of any of the patents-in-suit," Pergo disclosed that it possessed five additional "opinion letters" dated October 27, 2005 (the "Smith opinions") authored by the Skadden, Arps firm. (Docket No. 301 Ex. 3 ¶ 48; Ex. 4.) On November 19, 2009, Alloc requested that Pergo produce the Smith opinions. In a letter dated November 24, 2009, Pergo refused, citing the attorney-client privilege. On December 15, 2009, Alloc filed its expedited non-dispositive motion to compel Pergo to produce the Smith opinions.

**Analysis**

Because the subject of this motion – to what extent attorney-client privilege has been waived in the context of a claim of willful infringement in a patent case – concerns issues of substantive patent law, the law of the Federal Circuit governs, rather than the law of the regional circuit. *See, e.g.*, *Advanced Cardiovascular Sys. v. Medtronic, Inc.*, 265 F.3d 1294, 1307 (Fed. Cir. 2001) (explaining that "Federal Circuit law applies when deciding . . . issue[s] of

substantive patent law"); *In re EchoStar Commc'ns Corp.*, 448 F.3d 1294, 1298 (Fed. Cir. 2006) (applying Federal Circuit law to a discoverability claim in the same context).

## A. Pergo's procedural objections

Pergo seeks denial of Alloc's motion on two separate procedural grounds. First, Pergo claims that, under Civil Local Rule 7(h), Alloc's motion was untimely because it was filed three weeks after Pergo communicated its intent to withhold the Smith opinions. Second, Pergo points out that any resolution of this motion on the merits may be mooted by its pending summary judgment motion on the claim of willful infringement. Pergo maintains that, if the Court grants summary judgment on the issue of willfulness, Pergo will no longer have a need to assert an advice of counsel defense, and accordingly, attorney-client communications would no longer be relevant to Alloc's remaining claims (to the extent that any existed). Neither procedural issue raised by Pergo is persuasive.

First, this Court concludes that Alloc's motion was timely filed. Civil Local Rule 7.4 required that a non-dispositive expedited motion be filed "promptly" with the Court, but gave no further guidance as to a specific time limit. Although Civil Local Rule 7(h), its successor, has done away with that language, Alloc's motion was filed under Civil Local Rule 7.4. Regardless, this Court concludes that Alloc's motion was filed "promptly," to the extent that term acted as a temporal limitation upon such motions. Second, although the Alloc's Civil Local Rule 7.4 motion may be mooted by the outcome of Pergo's summary judgment motion on the issue of

willfulness that possibility is irrelevant to the privilege issue before the Court. Consequently, this Court will address the issues raised by Alloc.

## B. Willfulness and the Defense of Advice of Counsel

Alloc asserts a claim of willful infringement against Pergo. To succeed in its claim, Alloc must establish "by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *In re Seagate*, *LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007). *In re Seagate*, the court rejected prior interpretations of the willfulness standard which had equated the level of culpability necessary to roughly that of negligence, and heightened the standard required to that of "objective recklessness." *Id.* Therefore, in addition to proving that objective risk of infringement, one asserting willfulness must also prove that risk was "either known or so obvious that it should have been known to an accused infringer." *Id.*

The objectivity of this standard renders the actual state of mind of the accused irrelevant; i.e., it cannot defeat an allegation of willfulness simply by claiming that it subjectively did not believe it was infringing. *Id.* at 1374. Rather, an accused infringer may defend against a claim of willfulness by presenting evidence from which such a conclusion may reasonably have been drawn.

In many cases, that is accomplished by asserting an advice of counsel defense. *See; e.g., NewRiver, Inc. v. Newkirk Prods., Inc.*, Civ. No. 1:08-MISC-61 (GLS/RFT), 2008 WL 5115244, at *2 (N.D. N.Y. Dec. 4, 2008). A party asserting an advice of counsel defense seeks

5

to establish that, due to reasonable reliance on advice from counsel, its actions were undertaken in good faith. *In re Seagate*, 497 F.3d at 1369. To do so, the accused infringer introduces evidence of the advice of counsel upon which it relied, and, accordingly, an accused infringer who asserts such a defense *ipso facto* waives the attorney-client privilege at least to the extent necessary to establish facts that support such reasonable reliance.

Alloc claims that the waiver of privilege effected by Pergo's disclosure of communications between itself and Pavelko should extend to all other trial counsel for "'all other communications [and associated work product] relating to the same subject matter'" as the Pavelko opinions; i.e., validity, enforceability, and infringement. (Alloc Mot. 1.) (quoting *In re Seagate*, 497 F.3d at 1372, 1375). Alloc contends that allowing Pergo to "disclose favorable communications while asserting the privilege as to less favorable ones" would permit Pergo to manipulate the attorney-client privilege by using it as both a "'sword and a shield.'" (Alloc Mot. 3.) (quoting *In re Seagate*, 497 F.3d at 1372).

Relying primarily on the same precedent, Pergo asserts that the waiver of privilege effected by its defense of advice of counsel should not extend to the Smith opinions because they were authored by trial counsel acting independently of opinion counsel. Pergo claims that Alloc's request amounts to "a complete evisceration of the attorney-client and work product privileges." (Pergo Mem. 1.) Pergo asserts that only the opinions upon which it relies in advancing an advice of counsel defense are discoverable.

# C. Scope of the Waiver

The scope of the waiver is the issue raised by the motion. "The widely applied standard for determining the scope of a waiver of attorney client privilege is that the waiver applies to all other communications relating to the same subject matter." *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349 (Fed. Cir. 2005). More concretely, the scope of waiver has been defined to include:

> [A]ny document or opinion that embodies or discusses a communication to or from [the alleged infringer] concerning whether [the patent at issue] is valid, enforceable, and infringed by the accused . . . includ[ing] not only letters, memorandum, conversation, or the like between attorney and client, but also . . . any documents referencing a communication between attorney and client.

*Celerity, Inc. v. Ultra Clean Holding, Inc.*, 476 F. Supp. 2d 1159, 1166 (N.D. Cal. 2007) (quoting *In re EchoStar Commc'ns Corp.*, 448 F.3d 1296, 1304 (Fed. Cir. 2006)).

*In re EchoStar* set forth a broad definition of waiver that was later qualified in subsequent decisions. *See In re Seagate*, 497 F.3d at 1373-75. The scope of waiver in light of the purpose of the attorney-client privilege, generally, and the rationale behind waiving it in the context of defending against a claim of willfulness were considered in *In re Seagate*. There, the Court of Appeals for the Federal Circuit determined that neither supported generally extending the scope of a waiver to trial counsel where it had been waived as to an opinion counsel. *Id. In re Seagate* involved trial and opinion counsel who were from separate firms and, it was

undisputed that, the firms had not collaborated on the case. *Id.* The court denied the plaintiff's attempt to compel disclosure of all communications between trial counsel and defendant regarding the subject matter of the opinion letter. *Id.* at 1376. Thus, where trial counsel operated "separately and independently" of opinion counsel, the waiver of privilege generally does not extend to trial counsel. *Id.* at 1366, 1374-75.

In order to determine how *In re Seagate* applies to the issue presented, it is helpful to focus on the rationale behind the existence of the attorney-client privilege; i.e., "to encourage full and frank [attorney-client] communication . . . and thereby promote broader public interests in the observance of law and the administration of justice." *Id.* at 1372 (quoting *UpJohn Co. v. United States*, 449 U.S. 383, 389 (1981)). Effective administration of justice depends on the ability of counsel to operate "with a certain degree of privacy, free from unnecessary intrusion by opposing . . . counsel." *Id.* at 1373 (quoting *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947)). In determining the scope of any waiver of that privilege, courts must weigh those "demands of our adversarial system of justice" (that support the existence of the privilege in the first instance) against equitable concerns that favor a broad waiver; i.e., the potential for manipulation of the privilege though the use of sword and shield tactics, where favorable communications are disclosed and less favorable ones are withheld. *Id.* at 1373.

Viewed in this light, it becomes apparent that the "significantly different functions of trial counsel and opinion counsel" generally argue against a rule that would extend the scope of the waiver to trial counsel whenever it is waived as to opinion counsel. *Id.* at 1373. While a

8

broad waiver of privilege as to opinion counsel is necessary to prevent exploitation and ensure full disclosure, the adversarial process requires that trial counsel be afforded room to "prepare . . . legal theories and plan . . . strategy without undue and needless interference." *Id.* (quoting *Hickman*, 329 U.S. at 510-11). Extending the scope of waiver to include trial counsel, thereby giving opposing counsel access to trial counsel's thoughts and strategies, would result in "inefficiency, unfairness and sharp practices," and both litigants and the administration of justice overall would suffer. *Id.*

Moreover, consideration of the underlying purpose for which the privilege is waived in the context of Pergo's defense against a claim of willful infringement does not support an extension of the waiver to communications with trial counsel. *See id.* at 1374; *see also Celerity*, 476 F. Supp. 2d at 1166. Willfulness is determined by examining what accused knew or should have known at the time the complaint was filed. *In re Seagate*, 497 F.3d at 1371. Once an advice of counsel defense has been asserted, the plaintiff is entitled to all attorney-client communications that bear upon "what the [accused infringer] knew, and therefore what played a role in the client's belief as to whether its products infringed the patent in suit." *Celerity,* 476 F.Supp. 2d at 1166.

Thus, to the extent that communications between trial counsel and client occur after the litigation has commenced, they are generally not relevant to a claim of willfulness. *In re Seagate*, 497 F.3d at 1374. "[I]n ordinary circumstances . . . a willfulness claim asserted in the original complaint must be grounded exclusively in the accused infringer's pre-filing conduct."

9

*Id.* Communications between an accused infringer and trial counsel retained after the complaint was filed have little, if any, relevance to those claims because they do not speak to pre-complaint willfulness. *Id.*

*In re Seagate* holds that as a general proposition trial counsel are shielded from the scope of a waiver of attorney-client privilege that occurs when an accused asserts an advice of counsel defense. *Id.* at 1374-75. However, it emphasized that exceptions to this general proposition should be made where parties attempt to manipulate the role of counsel in order to escape the scope of the waiver. *Id.* "Trial courts remain free to exercise their discretion in unique circumstances to extend waiver to trial counsel, such as if a party or counsel engages in chicanery." *Id.* Subsequent decisions have extended the scope of waiver, with limitations, to trial counsel who had a pre-litigation role in advising the accused infringer. *See NewRiver*, 2008 WL 5115244, at *4 (permitting deposition of trial counsel who was also opinion counsel); *Duhn Oil Tool, Inc. v. Cooper Cameron Corp.*, No. 1:05-cv-01411 OWW GSA, 2009 WL 3381052, at *16 (E.D. Cal. Oct. 15, 2009) (permitting deposition of in-house counsel who was belatedly labeled trial counsel by the accused infringer).

The discretionary element of *In re Seagate* leaves undisturbed prior decisions extending the waiver to trial counsel whose connection with opinion counsel raised equitable concerns. *See, e.g.*, *Celerity*, 476 F. Supp. 2d at 1164. In *Celerity*, both trial and opinion counsel were from the same firm. Despite the defendant's claims that trial and opinion counsel did not

collaborate, the court extended the waiver of privilege to trial counsel for communications on the subject matter of the opinion relied upon.  Id.

While predating *In re Seagate*, *Celerity* is distinguishable because the relationship between trial and opinion counsel is an example of  a "unique circumstance" that justifies departure from the general rule.  *Celerity* explained that trial counsel cannot be permitted to "use their status . . . to erect a barrier to discovery of documents to which plaintiff would otherwise be entitled."  *Id.* at 1167 (quoting *Michlin v. Canon, Inc.*, 208 F.R.D. 172, 174 (E.D. Mich. 2002)).  Based upon a California ethics rule attributing the representation of a client by one member of a firm to the entire firm, the court expressed a general concern that "information will be shared which shouldn't be," and held that the plaintiff was entitled to communications between trial counsel and the accused infringer regarding the subject of the opinion relied upon. *Id.* at 1164, 1166.

When the attorney-client privilege is waived to defend a claim of willfulness, a concurrent waiver of the immunity protecting counsel's work product may  also be effected. *See In re Seagate*, 497 F.3d at 1375-76.  Work product immunity is qualified; a party may obtain disclosure of opposing counsel's work product upon a sufficient showing of "need and undue hardship."  *Id.* at 1375 (citing Fed. R. Civ. P. 26(b)(3)).  The level of need and hardship depends on the nature of work product sought.  *Id*.  Factual work product can be discovered solely upon a showing of substantial need and hardship; mental process work product such as plans, strategies, tactics, and impressions, whether memorialized in writing or not, "is afforded greater,

11

nearly, absolute protection." *Id.* Like waiver of attorney-client privilege, the general rule shields trial counsel from work product waiver, absent exceptional circumstances. *Id.* at 1376.

Here, Alloc seeks to compel disclosure of the Smith opinions, which were prepared by Pergo's trial counsel more than five years after Alloc filed its action for willful infringement. Alloc contends that, by disclosing communications between it and its original trial counsel, Pavelko (whose opinions Pergo relies upon), Pergo has waived the attorney-client privilege as to all of its other, subsequent trial counsel. Pursuant to that "broad" waiver, Alloc seeks production of these additional "opinion letters" authored by Pergo's trial counsel.

Although the factual circumstances presented here are not directly analogous to any of the precedent cited by either party, this Court concludes that this situation is closer to that of *In re Seagate* than *Celerity* or *NewRiver*. Although the Stevens, Davis firm and the Skadden, Arps firm were both retained as trial counsel for Pergo at some point, Alloc does not contend that the two firms ever concurrently represented Pergo. Thus, while both may accurately be described as trial counsel, the two firms nevertheless operated "separately and independently" of one another. Therefore, the scope of any waiver of privilege as to the Pavelko opinions does not extend to communications with subsequent, separate trial counsel.

Unlike *Celerity*, where the specific ethics rule punched a hole in the "wall" purportedly erected between the trial and opinion counsel, Alloc has not persuaded this Court that a similar ethical conundrum exists in this case. *See Celerity*, 476 F. Supp. 2d at 1164. Pergo made the decision to change trial counsel to the Skadden, Arps firm about six months after the

12

complaint was filed, and roughly six *years* before the Federal Circuit's *In re Seagate* decision, which set forth the general rule protecting trial counsel. So while Pergo's decision may have been prescient, no evidence has been presented suggesting that Pergo switched trial counsel primarily to circumvent the waiver of privilege. Further, even if that consideration did drive Pergo's decision, courts have noted that it is prudent litigation strategy – not chicanery – to retain trial counsel separate from opinion counsel. *See Celerity*, 476 F.Supp. 2d at 1176 (suggesting that it is wise to hire separate trial and opinion counsel). Our adversarial system would be undermined if waiver were extended to all trial counsel any time a defendant briefly retained its opinion counsel as trial counsel before realizing the strategic disadvantage of that decision and changing course.

Moreover, there is no reason to believe that production of the Smith opinions would reasonably lead to the discovery of evidence relevant to Alloc's claim of willful infringement. It is well settled that a claim of willfulness is necessarily based upon conduct prior to the filing of the complaint. *In re Seagate*, 497 F.3d at 1374; *Celerity*, 476 F. Supp. 2d at 1166. This Court is unpersuaded that an opinion rendered a half-decade after the commencement of this litigation has any bearing on the extent to which Pergo knew or should have known that it was infringing upon Alloc's patent(s) prior to when the Complaint was filed. Contrarily, the Pavelko opinions were authored around the time the litigation commenced, and are therefore either directly indicative of what Pergo knew or should have known prior to its commencement or are sufficiently related temporally and topically so that they may yield evidence of what Pergo knew

13

or should have known prior to the commencement of this action. Although the scope of waiver must be sufficiently broad to prevent selective disclosure, it is not so broad as to command disclosure of communications not apparently relevant to prove the willfulness claim asserted. Accordingly, Alloc's expedited non-dispositive motion to compel production of the Smith opinions is denied.

## ALLOC'S MOTION TO STRIKE

Alloc filed a Rule 7.4 expedited non-dispositive motion to strike the declaration of Thomas S. Wright ("Wright") submitted in support of Pergo's motions for summary judgment. Alloc asserts that, based on his declaration, Wright did not begin working for Pergo until October 2005. However, Wright's declaration addresses events that occurred prior to that date and business practices that were in place prior to that date. Alloc asserts that the declaration should be stricken because Wright lacks personal knowledge of the facts asserted in his declaration, and his declaration lacks foundation and is hearsay. Pergo asserts that Alloc delayed too long in seeking "expedited" relief, its motion inappropriately seeks to strike the entire affidavit, and that its objections are lacking in merit.

Although Wright was not employed by Pergo until 2005, Wright states that he has been with Pergo for over four years, currently serves as Pergo's Director of Research and Development, and that he conducted a "diligent search of Pergo's records" before preparing his affidavit. (Docket No. 275 ¶¶ 1, 5.) Wright's position and experience, coupled with his review of Pergo documents, render him capable of having "personal knowledge" not only of current

14

Pergo policies, but historic Pergo policies and events documented by Pergo in records kept in the ordinary course of business. Furthermore, when an employee with appropriate experience uses records kept in the ordinary course of business to prepare an affidavit, that affidavit cannot be stricken on hearsay grounds, as those business records properly fall within a hearsay exception. *See Prudential Ins. Co. of Am. v. Lehman*, No. 99 C 4304, 2001 WL 138922, at *3 n.5 (N.D. Ill. Feb. 16, 2001). The declaration also provides sufficient foundation for the statements made by Wright. Therefore, Alloc's motion to strike the entire Wright declaration is denied.[1]

## ALLOC'S MOTION TO EXCLUDE AND STRIKE

Alloc filed a motion seeking to exclude the testimony of Pergo's expert Stephen G. Kunin ("Kunin") and to strike Kunin's supplemental report. The issues presented by the motion are whether Kunin's report is properly characterized as a report on which Pergo has the burden of proof or whether it is a rebuttal report, and whether it is inadmissable under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). A key case cited by Alloc is *Sundance, Inc. v. DeMonte Fabricating Ltd.,* 550 F.3d 1356, 1362 (Fed. Cir. 2008). If the Court does not exclude Kunin's testimony and strike his report, Alloc requests leave to depose him.

Rule 702 of the Federal Rules of Evidence states:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in

---

[1] Alloc has also raised objections to the Wright Declaration in its responses to Pergo's proposed findings of fact in support of the two motions for summary judgment that rely on that declaration, *see, e.g.,* Docket No. 286. Those objections will be considered in disposition of the summary judgment motions.

issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Under *Daubert*, 509 U.S. at 597, courts are charged with a "gatekeeping role," the objective of which is to ensure that expert testimony admitted into evidence is both reliable and relevant. *See also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999) (holding that Rule 702 applies not only to "scientific" testimony, but to all expert testimony). Patent cases, like all other cases, are governed by Rule 702; there is no basis for carving out a special rule as to experts in patent cases. *Sundance*, 550 F.3d at 1360. In *Sundance*, the court held that the trial court had abused its discretion in allowing an experienced patent attorney to testify on the issues of invalidity or infringement, because he was not a person of ordinary skill in the art of the invention. 550 F.3d at 1362-64.

### Background Facts

On August 19, 2009, Pergo's technical expert, Richard T. Kaczkowski ("Kaczkowski") served an initial expert report on the issue of invalidity. (Docket No. 279, Ex. A.) In that report, he identified ten prior art references that he contends (either alone or in combination) render one or more of the asserted patent claims invalid. (*See id.* at 5 )

On September 25, 2009, Alloc's technical expert, Robert Rice, Ph.D., ("Rice"), served a responsive expert report on the issue of invalidity. (Ex. A (Rice Rep.) to Tulin Decl.

(Docket No. 332).) In addition to substantively addressing some of the prior art that Kaczkowski

raised, Rice offered two additional opinions that did not respond to any of Kaczkowski's initial

arguments. First, Rice placed the nature and extent of the United States Patent and Trademark

Office's ("USPTO") examination of the five patents-in-suit at issue for the first time, stating:

> All of the patents cited [by Kaczkowski] have been reviewed by one or
> more patent examiners prior to the issue of the [patents-in-suit]. I have
> reviewed the prior art relied on by [Kaczkowski] and have concluded that
> the judgment of the patent examiners is correct. . . . Although I have
> addressed [Kaczkowski's] contentions with regard to the combinations in
> the attached, I believe the judgment of the patent examiner is correct.

(Rice Rep. at 3.) Rice repeated this statement in his claim charts. (*See e.g.*, Ex. B to Tulin Decl.

at 9.)

Rice included a chart, outlining whether and to what extent the USPTO had

examined each reference during prosecution of the patents-in-suit. (*Id.* at 4.) As he discussed

the individual prior art references in the body of his report, Rice noted six separate times that he

"believe[s] that the examiners were correct in their assessments with respect to "the respective

prior art references identified by [Kaczkowski]." (Rice Rep. at 5-7.) In discussing his view that,

contrary to Kaczkowski's opinion, the '579 patent claims are not obvious, Rice stated that he

"choose[s] to accept the judgment of the patent examiners" with regard to the alleged

non-obviousness of the asserted claims. (Ex. B to Tulin Decl. at Chart 7c, 87.)

Second, Rice offered an opinion as to the applicability and holdings of the Supreme

Court's decision in *KSR International Co. v. Teleflex Inc.*, 550 U.S. 398 (2007). He stated that

he had "reviewed the Supreme Court's decision in *KSR v. Teleflex* on obviousness, and ha[d]

taken that into account in [his] opinions." (Rice Rep. at 3.) Specifically, Rice opined as follows:

> In the KSR case, there was a practical need by the car manufacturers for a gas
> pedal that could work with computer controlled engines and was adjustable and
> moveable to accommodate drivers of different heights. This need was
> communicated to the technical people at the company that supplied gas pedals, and
> they designed the pedal that was the subject of the patent in that case. The Supreme
> Court noted that this was an instance of the market providing a motivation to
> combine elements that were old to make [a] new kind of gas pedal. This case has
> a very different set of circumstances.

(Rice Rep. at 8.)

On October 6, 2009, in response to the opinions that Rice offered in his responsive

report, Kunin served a narrow rebuttal report in which he was "asked only opine on the manner

of making non-obviousness determinations based on the Supreme Court's guidance in *KSR*, in

relation to that decision's effect on USPTO guidance to examiners for making non-obviousness

determinations." (Docket No. 325, Ex A. (Kunin Rep.) ¶ 14.) Kunin opined, contrary to Rice's

interpretation, *KSR* "altered the existing Federal Circuit construct for assessing obviousness"

which had applied at the time that the USPTO was examining the patents-in-suit, such that the

assessments of the USPTO examiners were "based upon a set of standards, regulations,

guidelines, and training materials that are no longer in force." (*Id.* ¶¶ 18, 22.) Because "the *KSR*

decision has resulted in a general reorientation and restructuring of the approach of the USPTO,"

the "'judgment of the patent examiners' in this case was based upon outdated examination

guidelines on judging non-obviousness, training, and judicial precedent - all of which have

18

changed since the time that the patents-in-suit were examined." (*Id.* at ¶¶ 28–29.) Based upon his experience as a patent examiner and his work in authoring previous USPTO examination guidelines, Kunin sets forth the changes that have occurred to the USPTO's obviousness standards since the patents-in-suit were examined. (*Id.* at ¶¶ 28-42.)

**Analysis**

As the foregoing summary reveals Kunin's report is properly characterized as a rebuttal report. It responds to Rice's reliance on the prior opinions of patent examiners with respect to the non-obviousness of the asserted claims. Therefore, the report is not untimely.

Furthermore, although Alloc asserts that Kunin is not qualified as a technical expert because Kunin is a patent lawyer who has no experience or education in the art of laying mechanically locking floors, Kunin is being asked to provide expert opinion on a narrow issue; that is, how patent examination procedures governing obviousness have changed since the examination of the patents-in-suit. Kunin has extensive experience having been employed for more than three decades with the USPTO, including serving as the Deputy Commissioner for Patent Examination Policy in the Office of the Commissioner for Patents for the USPTO from 1994 to 2004, when he was responsible for providing direction on the establishment of new rules, practices, and procedures, reviewing and revising the Manual of Patent Examining Procedure ("MPEP"), and overseeing the Office of Patent Legal Administration (which implements patent laws by developing rules and practices). (*Id.* at ¶ 7.) Prior to 1994, Kunin was the Deputy Commissioner for Patent Examination Policy, during which time he supervised the Patent

Examining Group Directors and managed the Patent Examining Corps. (*Id.* at ¶ 9.)  While employed at the USPTO, Kunin also served as a patent examiner, a supervisory patent examiner, a patent examining group director, and as an instructor at the USPTO's Patent Academy.  (*Id.* at ¶¶ 10-11.)  Since 2004, Kunin has been in private practice.  (*Id.* at ¶ 3.) He also serves as an adjunct professor at George Mason Law School where he teaches a patent law course.  (*Id.*)

Kunin has not been with the USPTO since 2004 and *KSR* was decided in 2007.  However, based on his experience, Kunin is qualified to testify about the USPTO's obviousness examination procedures prior to *KSR*, and how they have changed since then.  *Sundance*, 550 F.2d at 1362-64, is distinguishable because Kunin is not being called to testify on the issue of invalidity.  Kunin may provide relevant insight into the pre-*KSR* patent examination procedures relating to obviousness and may testify as an expert on that subject.  *See Sundance, Inc.,* 550 F.3d at 1361 n.2. ("We have no doubt that . . . an experienced patent attorney is qualified to testify as to patent office procedure generally." )  However, Kunin may not testify about his interpretation of *KSR*.  *See Armament Sys. & Procedures, Inc. v. IQ Hong Kong Ltd.*, No. 00-C-1257, 2007 WL 1267877, *1 (E.D. Wis. Apr. 24, 2007)(citing *United States v. Oliveros*, 275 F.3d 1299, 1306-07 (11th Cir. 2001) (stating domestic law is properly considered and determined by the court whose function it is to instruct the jury on the law)).

Because Kunin is a rebuttal expert and he is not testifying as a technical expert, Alloc's motion to strike Kunin's expert report and to preclude his testimony at trial is denied.

**ALLOC'S MOTION TO LIMIT THE TESTIMONY OF PERGO'S EXPERT TO OPINIONS ON INFRINGEMENT EXPRESSED IN HIS RESPONSIVE REPORT OF SEPTEMBER 25, 2009, AND MOTION TO STRIKE THE SUPPLEMENTAL REPORT OF KACZKOWSKI**

Alloc moves the Court for an order limiting the testimony of Pergo's technical expert, Kaczkowski, to the opinions on infringement expressed in his responsive report of September 29, 2009, and to strike the supplemental report of Kaczkowski. Alloc maintains that two days before the deadline for filing dispositive motions, and five weeks after responsive reports were due, Pergo tendered a supplemental report from its expert Kaczkowski. (*See* Docket No. 307, Ex. A (Kaczkowski Supp. Rep.).) Alloc states that in such report Pergo attempts to supplement its opinions on infringement to include a significant new theory of non-infringement – the absence of play on the short sides of panels. Alloc maintains that exclusion of the supplemental opinion is required because the violation is not justified and allowing the supplemental opinion would not be harmless. Pergo maintains that Kaczkowski's supplemental report clarifies his original view that Pergo products lack play, based upon previously produced photographs; Alloc's counsel deposition questions solicited the opinions that are the subject of the supplemental report; and Rice's attempt to exploit the confusion that he introduced in his original report regarding his understanding of the term play - an understanding that he abandoned in his rebuttal report - justifies the need to clarify Kaczkowski's views in a supplemental report and Alloc has not alleged any harm from the supplemental report.

Based upon the Court's review of the materials filed by the parties in conjunction with the motion, it concludes that Kaczkowski's supplemental report is supplemental in that it clarifies Kaczkowski's prior written opinions and his October 20, 2009, deposition testimony. The report does not introduce a wholly new theory into the case.

The absence of play in the Pergo panels has been a theme throughout this litigation. Kaczkowski's responsive report on the issue of infringement (Docket No. 276, Ex. Y) responded to Rice's view that the accused products "include" play. Kaczkowski stated:

"[T]he accused Pergo products do not have play[.]" (*Id.* at ¶ 12.)

"Both the Uniclic and Smartlock profiles are designed to be tight when joined, with the joined panels urged together by a pretension or biasing force. As such, these profiles are fundamentally different from those described in the patents-in-suit and in the asserted claims." (*Id.* at ¶ 29.)

"To the extent that . . . Rice is asserting that the accused Pergo products have play that cannot be seen due to the 'ragged' nature of the surfaces, I disagree with his assertion." (*Id.* at ¶ 45.)

"In addition, as described in my analyses below, even when the surface of a panel is sanded and cleaned so that it is no longer 'ragged,' there is pretension between the joined panels that prevents the panels from being displaced, and indicates that there is no play between the accused Pergo products." (*Id.* at ¶ 47.)

"As discussed below, my analysis of the tested Pergo products confirms the presence of pretension, which counteracts any difference in the thickness of the tongue and the thickness of the groove, and prevents 'play' as the Court has defined that term." (*Id.* at ¶ 60.)

"[T]he accused Pergo products do not exhibit 'play[.]'" (*Id.* at ¶ 83.)

Kaczkowski made clear that these opinions were directly based on the Court's claim construction Order, which places no limitations as to the side of a panel on which the claimed play could be found. (Id. at ¶¶ 16-17.) Like Rice, Kaczkowski did not limit his views regarding play to any particular side.

At his October 20, 2009, deposition, Kaczkowski testified that he interpreted Rice's opinion as only indicating that play existed on the long side of the panels. (Kaczkowski Dep. 6-7, 10-11, 32.) Kaczkowski indicated that he had not expressed an opinion on short side panels because he was responding to Rice's position which he interpreted as only opining as to the presence of play on the long side of the panels. (*Id.* at 32-33.) During that deposition, Alloc solicited the opinion that play does not exist on the short side of the panels that Kaczkowski examined. (*Id.*)

Eight days after his deposition, Kaczkowski served his supplemental report, opining that play does not exist on the long or short side of the panels. The opinion did not involve any new testing. It refers to Kaczkowski's deposition testimony and optical images from Kaczkowski's original testing. Thus, the Court concludes that Kaczkowski's opinion is a proper supplemental report within the scope of Rule 26(e). *See Mintel Int'l Group, Ltd. v. Neergheen*, 636 F. Supp. 2d 677, 685-86 (N.D. Ill. 2009); *Medtronic Vascular, Inc. v. Abbott Cardiovascular Sys, Inc.*, No. C-06-1066 PJH (EMC), 2008 WL 4601038, at *2 (N.D. Cal. Oct. 15, 2008); *Wright*

*v. Liberty Mut. Fire Ins. Co.*, No. 06-cv-351-RJC-KLM, 2009 WL 3334822, at *2 (D. Colo. Oct. 13, 2009). Under Rule 26(e)(2), Kaczkowski had a duty to supplement his report to include the opinions that he expressed during his deposition. Additionally, given that there is no trial date and no deadline for pretrial disclosures, the supplementation was timely.

Moreover, the ultimate question on this issue is one of harm or prejudice to Alloc. *See, e.g., Musser v. Gentiva Health Servs.*, 356 F.3d 751, 758 (7th Cir. 2004) (exclusion not mandated if late disclosure was harmless); *Sherrod v. Lingle*, 223 F.3d 605, 613 (7th Cir. 2000) (finding absence of harm or unfair surprise). Under these circumstances, where no trial date is scheduled, this Court cannot find that Alloc will be harmed by the supplemental report. Therefore, Alloc's motion to limit the testimony of Pergo's expert and to strike the supplemental expert report of Kaczkowski is denied. However, Pergo must make Kaczkowski available for a continued deposition to last no more than four hours. The parties must meet and confer to determine a mutually agreeable date for the deposition.

### PERGO'S MOTION FOR LEAVE TO FILE A FIRST AMENDED ANSWER AND COUNTERCLAIMS

Pergo seeks leave to file a first amended answer and counterclaims pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure.[2] Alloc opposes the motion asserting that Pergo unduly delayed in seeking leave to amend its answer and counterclaims and that it will be unduly prejudiced.

---

[2]Pergo's motion pre-dates the December 1, 2009, amendments to Federal Rule of Civil Procedure 15.

As pertinent to Pergo's motion, Rule 15(a)(2) provided that pleadings may be amended with leave of court and that leave should be freely given when "justice so requires," but noting that "[r]easons for finding that leave should not be granted include undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment." *Airborne Beepers & Video, Inc. v. A T & T Mobility LLC*, 499 F.3d 663, 666 (7th Cir. 2007) (internal quotation marks and citations omitted)).  Although Alloc argues that Pergo unduly delayed the amendment, their contention is not supported by the record.  Rather, it was not until August 2007 that Alloc expanded their infringement allegations to include Pergo's glueless products generally and it was not until the expert phase of discovery that Alloc disclosed that it is relying on Smartlock samples and products that it obtained as early as 2001 in an attempt to prove infringement.

Alloc's motion for leave to file a fifth amended complaint was granted on February 27, 2008.  However, the fifth amended complaint was not actually filed until November 20, 2008.  Pergo then filed its answer and counterclaims to the fifth amended complaint on December 3, 2008.

Moreover, although Alloc claims that Pergo is raising the doctrines of laches and estoppel for the first time, it is not correct.  In both Pergo's Answer to Alloc's fourth amended complaint and Pergo's answer to Alloc's fifth amended complaint, Pergo asserted the affirmative defenses of laches and equitable estoppel as to the '621 patent and the '439 patent. (*See* Docket

25

Nos. 174 at 11; 239 at 10.)  However, Pergo indicates that Alloc never served any document requests or interrogatories related to such defenses and never addressed the defenses with any Pergo personnel. Thus, Alloc's suggestion it will be unduly prejudiced because the deadline for discovery has passed is not persuasive.  Therefore, Pergo's motion to file a first amended answer and counterclaims is granted.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

Alloc's expedited non-dispositive motion to compel (Docket No. 301) is **DENIED**.

Alloc's expedited non-dispositive motion to strike the Wright declaration (Docket No. 300) is **DENIED**;

Alloc's motion to exclude the testimony of Kunin and strike Kunin's rebuttal report (Docket No. 324) is **DENIED**;

Alloc's motion to limit the testimony of Pergo's expert and to strike the supplemental expert report of Kaczkowski (Docket No. 305) is **DENIED**.  However, Pergo must make Kaczkowski available for a continued deposition to last no more than four hours;

Pergo's motion for leave to file a first amended answer and counterclaim (Docket No. 258) is **GRANTED**; and

The Clerk of Court is **DIRECTED** to file the first amended answer and counterclaims (Docket No. 258-2) attached to Pergo's motion to amend.

Dated at Milwaukee, Wisconsin this 23rd day of September, 2010.

**BY THE COURT**


*s/ Rudolph T. Randa*

**Hon. Rudolph T. Randa**

**U.S. District Judge**